LOUISVILLE PETERBILT,
INC., Appellant,

v.

Randall COX, Appellee.

and

Larry A. Judd and Julie N.
Judd, Appellants,

v.

Paul A. Sinnott, Sherri Sinnott,
Edward Beaty, Appellees.

No. 2002–SC–0243–DG,
2002–SC–0939–DG.

Supreme Court of Kentucky.

April 22, 2004.

Douglas C. Ballantine, Stephen C. Hall, Ogden Newell & Welch, PLLC, Louisville, Counsel for Appellant, Louisville Peterbilt, Inc.

Kirk Hoskins, Louisville, Counsel for Appellee, Randall Cox.

William P. Swain, William B. Orberson, Phillips Parker Orberson & Moore, PLC, Louisville, Counsel for Appellants, Larry A. Judd and Julie N. Judd.

Glenn E. Acree, Acree Law Office, Lexington, Counsel for Appellant, the Kentucky Association of Realtors, Inc. Amicus Curiae.

M. Thurman Senn, Morgan & Pottinger, P.S.C., Louisville, Counsel for Appellant, Kentucky Bankers Association Amicus Curiae.

Robert W. Grant, Louisville, Counsel for Appellees, Paul A. Sinnott and Sherri Sinnott.

John R. Martin, Jr., Landrum & Shouse, LLP, Louisville, Counsel for Appellee, Edward Beaty.

Opinion of the Court by Justice STUMBO.

Both of the cases addressed in the opinion herein arose from two separate appeals from Court of Appeals' opinions denying Louisville Peterbilt, Inc. (LPI) and Larry and Julie Judd (Judds) relief from separate trial court rulings denying the parties' respective motions to dismiss or stay lawsuits pending arbitration. The outcomes of both cases turn on this Court's interpretation and application of certain sections of the Federal Arbitration Act (FAA) and the Kentucky Uniform Arbitration Act (KUAA). As both cases involve the same issue of law, in the interest of judicial economy we will address both with one opinion of this Court.

The issue on appeal is whether a claim of fraudulent inducement to enter into a contract is subject to an arbitration clause contained within the contract. More specifically, we are asked to determine whether KRS 417.050 exempts claims that a party was fraudulently induced to enter into a contract, from an otherwise binding arbitration clause contained therein; or does this "exemption" only apply to claims that a party was fraudulently induced to submit to arbitration and not to the underlying contract itself. Because we believe the better approach would be to interpret the KUAA consistent with the FAA and the interpretation of the Uniform Act by the majority of courts from other jurisdic-

tions, we find that a claim of fraud in the inducement of the underlying contract in general is arbitrable, unless the claim goes to the making or performance of the arbitration agreement itself. In so holding, the Court of Appeals' opinion in *Marks v. Bean,* Ky.App., 57 S.W.3d 303 (2001), finding to the contrary is hereby overruled. In accordance, the opinions of the Court of Appeals affirming the trial courts' orders in both cases *sub judice* are reversed, and the cases are remanded with directions that the parties be required to submit their claims to arbitration as mandated by their respective contracts.

### *Louisville Peterbilt, Inc. v. Randall Cox* 2002–SC–0243–DG

Randall Cox entered into a sales contract with LPI for the purchase of a used 1995 Peterbilt truck. The Retail Order Form signed by Cox contained the following language above the signature: "I agree specifically to the arbitration terms and procedures as set forth under the terms and conditions on the back of this page." The back of the Retail Order Form reads as follows:

> Any and all disputes arising out of or in connection with the interpretation, performance or non-performance of this agreement and any and all disputes arising out of or in connection with the transactions related to this agreement (including the validity, scope and enforceability of this arbitration provision, or disputes concerning rights granted pursuant to the statutes of the state in which Dealer is licensed) shall be finally and completely resolved by arbitration before a single arbitrator pursuant to the arbitration laws of the United States of America, as codified in Title IX of the United States Code (this agreement

touches and concerns interstate commerce) under the Commercial Arbitration Rules of the American Arbitration Association, in the form then existing. Any issue involving the arbitrability of any and all disputes between the parties shall be determined by the arbitrator. Venue of any suit to compel arbitration or to confirm an arbitration award shall be in the appropriate federal or state court sitting in the county where Dealer is located. Any party who prevails in any court proceeding to compel arbitration, in any proceeding to stay litigation commenced in disregard of this arbitration agreement, or in any proceeding to confirm or vacate an arbitration award, shall recover its reasonable attorney's fees from the non-prevailing party.

The parties also executed a "Truck Invoice Bill of Sale" that contained the following language just above the signature line: "I AGREE SPECIFICALLY TO THE ARBITRATION TERMS AND PROCEDURES AS SET FORTH UNDER THE TERMS AND CONDITIONS ON THE BACK OF THIS PAGE." The back of the Bill of Sale contained language nearly identical to that of the Retail Order Form quoted above.

Cox filed suit in Washington Circuit Court asking to have the contract rescinded on the basis of fraud in the inducement after LPI failed to reimburse Cox for expenses resulting from mechanical problems with the truck's engine alleged to be covered by warranty. The Washington Circuit Court subsequently denied LPI's motion to dismiss or stay proceedings pending arbitration. LPI appealed the ruling to the Court of Appeals, pursuant to KRS 417.220(1)(a)[1], which ultimately af-

---

**1.** KRS 417.220(1)(a) allows immediate review of the trial court's order even though it is

firmed the trial court on the basis of its decision in *Marks, supra.*

### Larry and Julie Judd v. Paul and Sherri Sinnott 2002–SC–0939–DG

The Judds and the Sinnotts entered into a Sales and Purchasing Contract for the sale of the Judds' residential property. The sales contract was a standardized form from the Louisville Board of Realtors, Inc. and contained the following language:

> **BINDING ARBITRATION:** All claims or disputes of Sellers, Buyers, brokers, or agents or any of them arising out of this contract or the breach thereof or arising out of or relating to the physical condition of the property covered by this purchase agreement (including without limitation, claims of fraud, misrepresentation, warranty and negligence) shall be decided by binding arbitration in accordance with the rules for the real estate industry, then in effect, adopted by the American Arbitration Association unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing by registered or certified mail with the other parties to the contract and with the American Arbitration Association or other arbitrators which the parties may agree upon and shall be made within one year after the dispute has arisen. An actual oral hearing shall be held unless the parties mutually agree otherwise. The Kentucky Real Estate Commission still retains jurisdiction to determine violations of KRS 324.160. Any proceeding pursuant to KRS 324.420(1) to determine damages shall be conducted by an arbitrator pursuant to this clause and not in court. By signing below, the agents, on behalf of themselves and their brokers, agree to be bound by this arbitration clause, but are not parties to the contract for any other purpose. The terms of this Paragraph 15 shall survive the closing.

The Sinnotts filed suit in Jefferson Circuit Court seeking, among other things, to rescind the contract on the basis of fraud in the inducement arising from alleged misrepresentations with the plumbing system. The Judds made a motion to compel arbitration, which was denied by the trial court. The Court of Appeals ultimately affirmed the trial court's order by stating that *Marks, supra,* (which involved a nearly identical arbitration clause and factual scenario) did not require arbitration of a claim of fraudulent inducement in the contract.

### LAW

Section 2 of the FAA (previously referred to as the United States Arbitration Act of 1925) addresses the validity and enforcement of agreements to arbitrate:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*

considered interlocutory in nature. *Valley Constr. Co., Inc. v. Perry Host Management Co., Inc.,* Ky.App., 796 S.W.2d 365, 366 (1990).

9 U.S.C.A. § 2 (West 2004) (emphasis added). Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition for an order compelling arbitration. 9 U.S.C.A. § 4 (West 2004). Section 4 further states that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* Section 4 also provides that if the agreement to arbitrate is itself at issue, the court shall hear the dispute rather than compelling arbitration. *Id.*

In 1984, Kentucky adopted the Uniform Arbitration Act, codified at Chapter KRS 417. *Bridgestone/Firestone v. McQueen,* Ky.App., 3 S.W.3d 366, 367 (1999). The relevant provisions are nearly identical to those of the FAA. KRS 417.050 reads in part:

> A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, *save upon such grounds as exist at law for the revocation of any contract.*

(Emphasis added). KRS 417.060 provides the remedies available to a party seeking to compel arbitration:

(1) On application of a party showing an agreement described in KRS 417.050, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determi-

nation of the issue so raised. The court shall order arbitration if found for the moving party; otherwise, the application shall be denied.

(2) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

## ANALYSIS

■■■ Particularly at issue is the interpretation to be given to the "savings clause" contained in KRS 417.050—"save upon such grounds as exist at law for the revocation of any contract." In *Marks v. Bean,* the Court of Appeals held that although a majority of federal and state courts in jurisdictions that have adopted the Uniform Arbitration Act have interpreted the savings clause to apply only when the allegation of fraud goes to the making of the arbitration clause itself rather than the underlying contract in general, it would be more in keeping with Kentucky's public policy and legislative intent to follow the minority of jurisdictions' interpretation. 57 S.W.3d at 306. The Court of Appeals went on to say that the majority view's interpretation of the savings clause "disproportionately elevates the policy favoring arbitration over the strong public policy against fraud." *Id.* at 307. We disagree. Kentucky and national policy have generally favored agreements to arbitrate. *See Id.* at 306; *Saneii v. Robards,* 187 F.Supp.2d 710, 714 (W.D.Ky. 2001); *Kodak Mining Co. v. Carrs Fork*

*Corp.,* Ky., 669 S.W.2d 917, 921 (1984). The FAA establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). In *Kodak Mining, supra,* (written before the KUAA was adopted), this Court specifically said, "Kentucky has no public policy that would prevent the enforcement of a private arbitration agreement in contract cases where the Federal Arbitration Act or comparable legislation might apply." *Id.* at 921. While obviously it is good public policy to disfavor fraud, requiring parties to arbitrate such claims (if in fact the arbitration agreement contemplates doing so, *i.e.,* the clause itself is broad enough in scope to encompass claims such as fraudulent inducement) does not in any way endorse a policy that is lax on fraud. Further, of the thirty-five states that have adopted the Uniform Arbitration Act thus far, at least thirty have chosen to follow the majority view espoused by LPI and the Judds today. *See, e.g., Old Republic Ins. Co. v. Lanier,* 644 So.2d 1258 (Ala.1994); *Thompson v. Lee,* 589 A.2d 406 (D.C.1991); *Quirk v. Data Terminal Sys., Inc.,* 379 Mass. 762, 400 N.E.2d 858 (1980); *Weiss v. Voice/Fax Corp.,* 94 Ohio App.3d 309, 640 N.E.2d 875 (1994). *See also,* Jay M. Zitter, Annotation, *Claim of fraud in inducement of contract as subject to compulsory arbitration clause contained in contract,* 11 A.L.R.4th 774 (1982). There is a clear legislative intent to construe the KUAA consistently with other states that have enacted the Uniform Act. KRS 417.240 ("[t]his chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it").

■ The United States Supreme Court interpreted Sections 2 through 4 of the FAA and in particular, the savings clause provision, in *Prima Paint Corporation v. Flood & Conklin Manufacturing Company,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Court interpreted the language in Section 4 of the Act (providing the federal remedy for one seeking to compel arbitration) as evidence of Congress' intent to require arbitration to proceed once a court has determined that the making of a valid agreement to arbitrate is not in issue. *Id.* at 403–404, 87 S.Ct. 1801. This "separability doctrine" as it has become known, requires courts applying federal law to separate an otherwise valid arbitration clause from the contract within which it is contained to allow arbitration of all claims not going to the validity of the arbitration clause itself. *Id.* at 402, 87 S.Ct. 1801. The Court concluded that in so holding, it was honoring the plain meaning of the statute, along with the congressional intent that those parties who choose to arbitrate are "not subject to delay and obstruction in the courts." *Id.* at 404, 87 S.Ct. 1801. Federal Courts applying the FAA have held similarly. *See, e.g., Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926 (6th Cir.1998); *Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382 (11th Cir. 1996); *Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096 (2d Cir.1987); *Matterhorn, Inc. v. NCR Corp.,* 763 F.2d 866 (7th Cir.1985).

Our ruling today is consistent with the United States Supreme Court's holding in *Prima Paint, supra.* To read KRS 417.050 as requiring that any allegation made with regards to the contract as a whole that would be grounds for the "revocation of any contract" as lying outside the scope of arbitration, would be in effect to

render the arbitration statutes meaningless. In fact, any party seeking to avoid the agreement to arbitrate could simply plead fraudulent inducement in the underlying contract (rather than perhaps a more appropriate action such as breach of warranty) in order to ensure that a court and not an arbitrator heard its claim. *Saneii,* 187 F.Supp.2d at 714. "The resulting litigation would vitiate the primary benefit of arbitration, the expeditious and inexpensive resolution of disputes, and would effectively eviscerate the arbitration statute." *Id.*

■ Neither Cox nor the Sinnotts make a specific allegation that they were fraudulently induced to agree to arbitrate their claims. Counsel for the Sinnotts concedes as much. Cox made a general allegation of unconscionability in his complaint before the trial court and argues on appeal that there was no meeting of the minds between the parties; therefore, the contract is void and unenforceable. Specifically, Cox argues that the documents executed at the purchase of the truck (including the order form, sales invoice, and several other documents not mentioned by LPI) contain numerous inconsistencies regarding the type and scope of the warranty and also alleges that certain documents were incorrectly executed by LPI (*i.e.* LPI representatives' signatures missing). Cox also seems to argue that the documents in question constitute form contracts of adhesion used by LPI to intentionally defraud him. However, as stated above, each of these allegations attack the validity of the underlying contract itself, particularly the terms and scope of the warranty. An arbitrator can properly determine these matters. Cox merely introduces a myriad of other documents collateral to the transaction in order to demonstrate the inconsistencies throughout. However, Cox does not allege that the documents are inconsis-

tent in that some require the arbitration of claims and some do not, or that he was not aware that he was agreeing to submit his claims to arbitration. He simply argues that the documents cannot evidence a meeting of the minds. The fact remains that Cox signed two separate documents, each stating directly above his signature (one in all capital letters) that all claims would be submitted to an arbitrator for resolution, and he has not claimed that he was fraudulently induced to do so. All other alleged disputes are for an arbitrator.

The Sinnotts argue that a claim of fraudulent inducement is a tort and, pursuant to *American Advertising Distributors, Inc. v. American Cooperative Advertising, Inc.,* Ky., 639 S.W.2d 775 (1982), and *Bryant v. Troutman,* Ky., 287 S.W.2d 918 (1956), a cause of action that lies outside the contract, thus not subject to arbitration. The Sinnotts' reliance on *Bryant* is misplaced, as that case did not involve an arbitration contract. There, the court merely held that a party could not contract around his or her own fraudulent behavior. *Id.* at 921. *American Advertising Distributors, Inc., supra,* dealt with a claim of fraudulent inducement as to a choice of forum clause (for litigation or arbitration). However, the clause merely read, "[t]his agreement shall be governed by the laws of the State of Arizona, which shall be the forum for any arbitration or litigation arising hereunder...." *Id.* at 776. While noting that the parties did not even seek to rescind the contract, this Court declined to uphold the forum selection clause, as it was not one that arose out of the contract itself. *Id.* The arbitration provisions in both cases *sub judice* are substantially more thorough as to what types of disputes are within their scope. The Sinnotts' agreement specifically provided that the torts of fraud and misrepresentation would be arbitrable. We also take notice

that this case was decided before the KUAA was adopted by this state. Therefore, we do not find the above cases to be inconsistent with our holding today.[2]

■ In support of their argument, the Sinnotts maintain that a court of law must determine a claim for punitive damages, and therefore, a party seeking to defraud another could effectively avoid the imposition of punitive damages by compelling arbitration. This issue was not presented to any of the courts below. Accordingly, we decline to address the authority of an arbitrator to award punitive damages as it has not been properly briefed or argued before this Court.

■ Both Cox and the Sinnotts also assert that LPI and the Judds, respectively, have the burden of proving a valid arbitration agreement exists, and that neither has met this burden. It is true that the party seeking to enforce an agreement has the burden of establishing its existence, but once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement. *Valley Constr. Co., Inc., infra,* at 368. The party seeking to avoid the arbitration agreement has a heavy burden. *Id.* LPI and the Judds have met the prima facie burden by providing copies of written and signed agreements to arbitrate. Thus, these claims have no merit.

Since we have interpreted the KUAA consistent with the FAA, we need not resolve whether in each case there exists a contract "evidencing transactions in interstate commerce," *Fite & Warmath Constr. Co., Inc. v. MYS Corp.,* Ky., 559 S.W.2d 729, 734 (1977), in order to determine the

applicability of federal or state law. The outcome is the same under both the FAA and the KUAA, although we note that the agreement between LPI and Cox specifically stated that the FAA would govern any disputes that might arise. It is also not necessary to address Cox's argument that LPI somehow waived its argument under the FAA because it brought the current action under KRS 417.220 (which allows appeals from orders denying arbitration made pursuant to KRS 417.060).

Therefore, for the reasons stated above, we hereby vacate the orders of the Washington Circuit Court and the Jefferson Circuit Court dismissing the motions of LPI and the Judds to stay proceedings and/or compel arbitration and remand both cases with directions to proceed in accordance with this opinion and the binding arbitration provisions provided in their respective agreements.

All concur.

---

**2.** It is important to note that arbitration agreements are private contracts and the parties are free to negotiate which claims are arbitrable. Those who wish the courts to maintain jurisdiction over certain matters must explicitly state so within the agreement.

Likewise, we do not mean to insinuate that every arbitration agreement will be broad enough to encompass all claims of fraud, misrepresentation, etc. Our holding today is confined to the arbitration clauses in the cases at bar.