CONSULTANTS AND BUILDERS, INC., Appellant,

v.

PADUCAH FEDERAL CREDIT UNION, Appellee.

No. 2007–CA–001874–MR.

Court of Appeals of Kentucky.

Sept. 19, 2008.

Van F. Sims, Paducah, KY, for appellant.

Stanley K. Spees, Paducah, KY, for appellee.

Before CAPERTON and VANMETER, Judges; GUIDUGLI,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Consultants & Builders, Inc. (CBI) appeals from orders entered by the McCracken Circuit Court relating to the arbitration provisions of a terminated construction agreement between CBI and appellee Paducah Federal Credit Union (PFCU). More specifically, CBI asserts that the trial court erred by granting the temporary injunctive relief requested by PFCU and restraining CBI from proceeding with arbitration, and by denying CBI's motion to compel arbitration. For the reasons stated hereafter, we reverse the trial court's orders, and we remand this matter for the entry of an order dissolving the injunction and compelling arbitration.

The parties entered into a contract for the design and construction of a credit union facility in Paducah, and CBI performed engineering and design activities. A dispute arose over the cost, and PFCU elected not to proceed with the project. Thereafter, PFCU refused to pay the $57,000 which CBI billed for its design services.

After PFCU denied CBI's request for mediation of the dispute, CBI filed a demand for arbitration with the American Arbitration Association (AAA), pursuant to the terms of the parties' contract. On July 20, 2007, the AAA found that CBI had met the applicable arbitration filing re-

---

1. Senior Judge Daniel T. Guidugli sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

quirements, that arbitration matters would proceed absent the parties' agreement or a court stay of the proceedings, and that by July 27 the parties should advise AAA of their preferences as to hearing locations. PFCU failed to timely state any hearing location preference, and the AAA determined that the arbitration hearing would be conducted in Atlanta. In response, PFCU filed the underlying complaint on June 28, alleging that the contract was void as fraudulently induced or materially breached, and seeking temporary injunctive relief. The circuit court ordered a stay of the arbitration proceedings on August 21, and on August 24, 2007, the court denied CBI's motion to dismiss or compel arbitration. This appeal from both orders followed pursuant to KRS 417.220(1)(a).

As the trial court made no findings of fact but instead evidently based its ruling on the application of contract law to the arbitration clause, our review is *de novo*. *Conseco Fin. Serv. Corp. v. Wilder,* 47 S.W.3d 335, 340 (Ky.App.2001). For purposes of our review the relevant portions of Kentucky's Uniform Arbitration Act, as set out in KRS Chapter 417, are "nearly identical to those of" the Federal Arbitration Act. *Louisville Peterbilt, Inc. v. Cox,* 132 S.W.3d 850, 854 (Ky.2004). Thus, it is unnecessary to determine in this proceeding whether state or federal law is applicable to the arbitration of the parties' contract, as "[t]he outcome is the same under both" state and federal arbitration law. *Id.* at 857.

Contractual agreements to resolve disputes by arbitration are addressed by KRS 417.050, which provides in pertinent part:

A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, en-forceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract.

Moreover, KRS 417.060(1) provides:

On application of a party showing an agreement described in KRS 417.050, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised. The court shall order arbitration if found for the moving party; otherwise, the application shall be denied.

Contractual arbitration agreements are subject to the rules of contract law, including the fundamental rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco,* 47 S.W.3d at 341. Further, the doctrine of unconscionability, which "has developed as a narrow exception to this fundamental rule[,]" is "directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* at 341.

More recently, in *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444, 126 S.Ct. 1204, 1208, 163 L.Ed.2d 1038 (2006), the United States Supreme Court addressed legal or equitable "[c]hallenges to the validity of arbitration agreements[,]" and divided such challenges into two categories:

One type challenges specifically the validity of the agreement to arbitrate.... The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or

on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

The Court concluded that three propositions apply to the issue of whether a challenge to an arbitration provision should be resolved by a court or by an arbitrator:

First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

546 U.S. at 445–46, 126 S.Ct. at 1209. *See also Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). So that no misunderstanding would result, the Supreme Court reaffirmed that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." 546 U.S. at 449, 126 S.Ct. at 1210.

■■■ The holding in *Buckeye* is consistent with the Kentucky Supreme Court's earlier holding in *Peterbilt* that "a claim of fraud in the inducement of the underlying contract in general is arbitrable, unless the claim goes to the making or performance of the arbitration agreement itself." 132 S.W.3d at 852. Indeed, the court noted that to hold otherwise would in effect

render the arbitration statutes meaningless. In fact, any party seeking to avoid the agreement to arbitrate could simply plead fraudulent inducement in the underlying contract (rather than perhaps a

more appropriate action such as breach of warranty) in order to ensure that a court and not an arbitrator heard its claim.

*Id.* at 855–56. Thus, if the party seeking enforcement presents *prima facie* evidence of the agreement's existence, "the burden shifts to the party seeking to avoid the agreement." *Id.* at 857.

Here, the parties' representatives signed the AIA Document A191—1996, Parts 1 and 2. The first page of both parts included the prominent notation that "[a]n *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed." Moreover, the Additions and Deletions Report for Part 2, as well as § 14 of Part 2, described various components of the project, including the calculation of related costs as percentages of other fees. Parts 1 and 2 both included arbitration terms, which were set out in Part 2[2] as follows:

§ 10.1 Claims, disputes or other matters in question between the parties to this Part 2 Agreement arising out of or relating to this Part 2 Agreement or breach thereof shall be subject to and decided by mediation or arbitration. Such mediation or arbitration shall be conducted in accordance with the Construction Industry Mediation or Arbitration Rules of the American Arbitration Association currently in effect.

§ 10.2 In addition to and prior to arbitration, the parties shall endeavor to settle disputes by mediation. Demand for mediation shall be filed in writing with the other party to this Part 2 Agreement and with the American Arbitration Association. A demand for mediation shall be made within a reasonable time after the claim, dispute or

---

**2.** Virtually identical terms were set out in §§ 6.1–6.3 of Part 1.

other matter in question has arisen. In no event shall the demand for mediation be made after the date when institution of legal or equitable proceedings based upon such claim, dispute or other matter in question would be barred by the applicable statutes of repose or limitation.

§ 10.3 Demand for arbitration shall be filed in writing with the other party to this Part 2 Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of repose or limitation.

■ PFCU asserted in its complaint that CBI fraudulently induced PFCU to enter into a contract which it did not intend to honor, and that CBI materially breached the contract by refusing to perform for the agreed-upon price. As in *Conseco*, however, the arbitration agreement applied even though the dispute was one "arising out of or relating to" the parties' contractual agreement "or breach thereof." Simply put, despite PFCU's claims to the contrary, the costs of the project clearly arose out of or were related to the agreement, including the Additions and Deletions Report referenced on the front pages of Parts 1 and 2. Any challenge to the validity of the arbitration agreement on grounds of either fraud or material breach was a challenge "on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid[,]" rather than a specific challenge only to the validity of the arbitration clause. *Buckeye*, 546 U.S. at 444–46, 126 S.Ct. at 1208–09. Hence, the challenges to the contract's validity, on grounds of fraud and material breach, were issues for consideration by the arbitrator, *id.*, 546 U.S. at 445–46, 126 S.Ct. at 1209, and the trial court erred by issuing a stay of the arbitration proceedings.

Finally, we note that although PFCU asserts on appeal that conducting the arbitration process in Atlanta will result in "an exercise in futility" because the result will not be enforceable by Kentucky state courts, *see Artrip v. Samons Constr., Inc.*, 54 S.W.3d 169 (Ky.App.2001), issues regarding future state or federal jurisdiction and enforcement procedures are not properly before us in this appeal. Moreover, the remaining allegations raised in PFCU's appellee brief are not properly before us and will not be discussed on appeal.

The orders of the McCracken Circuit Court are reversed, and this matter is remanded for entry of an order dissolving the injunction and compelling arbitration.

ALL CONCUR.