RENDERED: FEBRUARY 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0062-DG

CHRISTOPHER JACKSON III, AS
ADMINISTRATOR OF THE ESTATE OF
CHRISTINE JACKSON, DECEASED

APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-1770
FAYETTE CIRCUIT COURT NO. 15-CI-01838

LEGACY HEALTH SERVICES, INC.;
CAMBRIDGE PLACE GROUP, LLC
D/B/A CAMBRIDGE PLACE; AND
CAMBRIDGE PLACE PROPERTIES, LLC

APPELLEES

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**REVERSING AND REMANDING**

This appeal arises from an order of the Fayette Circuit Court denying the motion of Legacy Health Services, Inc. (Legacy), and Cambridge Place Group, LLC d/b/a Cambridge Place, and Cambridge Place Properties, LLC (Cambridge) (collectively "Defendants") to dismiss or, in the alternative, stay the lawsuit and compel arbitration of medical malpractice claims brought by Christopher Jackson III (Christopher), as guardian for his mother, Christine Jackson (Christine). The circuit court endeavored to address, as a matter of first impression, whether Christopher had the authority as Christine's guardian to enter into a binding voluntary arbitration agreement on his mother's behalf. Ultimately, the circuit court determined that he did not. The Defendants

appealed.  The Court of Appeals reversed.  After careful review, we reverse and remand for further proceedings.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding the issue on appeal are largely undisputed. Christine was adjudicated wholly disabled in December of 2011 and Christopher was appointed as her legal guardian by the Fayette District Court pursuant to KRS Chapter 387.  The district court utilized an AOC[1] Form 775 for the order of appointment, and did not specify the extent of nor did it restrict Christopher's authority to act on his mother's behalf as guardian.

In 2014, Christopher entered into an agreement with Cambridge that would allow his mother to reside in their long-term care facility.  Included in the admission documents was a voluntary arbitration agreement that required "[a]ny and all claims or controversies arising out of or in any way relating to [the] [a]greement or [his mother's] stay at the [Cambridge] [f]acility . . . [to] be submitted to alternative dispute resolution as described in the [a]greement." Christine's admission to the facility was not conditioned upon Christopher's acquiescence to the arbitration agreement.  Christopher, acting in his capacity as Christine's guardian, signed the agreement and Christine was admitted. Legacy provided services at the facility.

Christine died in January, 2015.  Christopher filed a medical negligence and wrongful death suit against the Defendants in May, 2015.  After filing their

---

[1] Administrative Office of the Courts.

answer, the Defendants filed a joint motion to dismiss the claims, or, in the alternative, to compel arbitration on the medical negligence claim. Christopher opposed the motion.

The trial court held the case in abeyance in anticipation of this Court's decision of whether to grant discretionary review of the Court of Appeals opinion in *LP Pikeville, LLC v. Wright*.[2] *Wright*, which was designated for publication, addressed as a matter of first impression the authority of a guardian appointed pursuant to KRS Chapter 387 to legally obligate his ward to resolve disputes by arbitration. We granted discretionary review in *Wright*, which automatically unpublished the Court of Appeals opinion pursuant to CR[3] 76.28(4)(a), but the parties settled the matter and filed a joint motion to dismiss, which we granted. *Wright* remained unpublished. The matter resumed before the circuit court, and the Defendants renewed their motion to compel arbitration.

The circuit court ultimately denied the Defendants' motion after making the following conclusions of law:

KRS[4] 387.640[5] explicitly provides:

---

[2] No. 2013-CA-000959-MR, 2014 WL 1345293 (Ky. App. Apr. 4, 2014).

[3] Kentucky Rule of Civil Procedure.

[4] Kentucky Revised Statute.

[5] Though the trial court referenced KRS 387.640 in its conclusions of law, we believe this was a typographical error, as the text of the statute the trial court referenced was clearly KRS 387.660. For the purposes of this Opinion, then, we assume the trial court found that Christopher lacked the authority as guardian to bind his ward on the basis of KRS 387.660—not KRS 387.640.

3

A guardian of a disabled person shall have the following powers and duties, except as modified by order of the court: [. . .]

(4) To act with respect to the ward in a manner which limits the deprivation of civil rights and restricts his personal freedom only to the extent necessary to provide needed care and services to him[.]

A guardian breaches the duties enumerated in KRS 387.640 when, upon attempting to obtain services for a ward, he enters into a voluntary pre-dispute arbitration agreement that unnecessarily restricts the ward's personal civil rights, including the right to a jury trial.

Additionally, the Court concludes that KRS 387.125 prohibits a guardian from encumbering a ward's legal rights without the approval of the court in any jurisdiction that has authority to protect the ward's estate.

Entering a voluntary pre-dispute arbitration agreement constitutes an encumbrance on a ward's legal rights.

A voluntary pre-dispute arbitration agreement is not binding on a ward if the guardian does not have the appropriate authority to enter said agreement. *See Ping v. Beverly Enterprises*, 376 S.W.3d 581 (Ky. 2012).

Christopher Jackson, Ill, in his capacity as "son," did not have the requisite legal capacity to bind Christine Jackson to a pre-dispute arbitration agreement.

Wrongful death beneficiaries are not bound by the terms of a pre-dispute arbitration agreement. Accordingly, Plaintiff's wrongful death claims cannot be compelled to arbitration.

For these reasons, the Court finds that the contract signed by Christopher Jackson, III as guardian is unenforceable and Defendants' renewed motion to stay

Plaintiff's claims and compel arbitration pursuant to KRS 417.060(1) is denied.

The Defendants appealed. Relying largely on *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,[6] the Court of Appeals reversed and held[7] that a guardian's "authority to enter into contracts generally is within the ambit of what is reasonably inferable from the statutes."[8] Therefore, the court concluded, "[t]he circuit court did what *Kindred* prohibits. It adopted 'a legal rule hinging on the primary characteristic of an arbitration agreement—namely, a waiver of the right to go to court and receive a jury trial.'"[9] Christopher appealed to this Court. We discuss additional facts as necessary below.

## II. ANALYSIS

Arbitration agreements, as with any other valid contract, are generally enforceable. State courts must compel arbitration when there is a valid, written arbitration agreement between the parties.[10]

---

[6] 137 S. Ct. 1421, 1426 (2017).

[7] The Court of Appeals forcefully, but erroneously, opined that *Kindred Healthcare, Inc. v. Clark*, 137 S. Ct. 1421 (2017) applies here. *Clark* pertained to attorneys-in-fact who were given their authority by a power of attorney instrument. A guardian receives his or her power from the state, not through the conveyance of that power from the ward by an instrument. Therefore, *Clark* has limited relevance or applicability to this case beyond the general principles of a state court's power to make rules prohibiting or impeding the enforcement of arbitration agreements.

[8] *Legacy Health Servs., Inc. v. Jackson*, No. 2019-CA-1770-MR, 2021 WL 137772, at *4 (Ky. App. Jan. 15, 2021).

[9] *Id.* (quoting *Kindred*, 137 S. Ct. at 1427).

[10] 9 U.S.C. § 2.

5

Disputes concerning arbitration agreements may implicate both the Kentucky Uniform Arbitration Act (KUAA),[11] and the Federal Arbitration Act (FAA).[12] Under both Acts, "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate."[13] When the burden has been met, the party seeking to avoid the agreement must then rebut the presumption that the agreement is valid.[14] "[T]he existence of a binding agreement to arbitrate is necessarily a threshold consideration for a trial court faced with a motion to compel arbitration. Disposition of that issue, as both the United States Supreme Court and this Court have long recognized, implicates state law contract principles."[15] State courts may deem arbitration agreements invalid due to "generally applicable contract defenses," but not because of "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." [16]

There is no dispute that the arbitration agreement presented by the Defendants is authentic or that it contained less than all the essential terms to

---

[11] KRS 417.045, *et seq.*

[12] 9 U.S.C. §§ 1, *et seq.*

[13] *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 590 (Ky. 2012) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995); *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850 (Ky. 2004)).

[14] *Louisville Peterbilt, Inc.*, 132 S.W.3d at 857.

[15] *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 333 (Ky. 2015) (Abramson, J., dissenting), *as corrected* (Oct. 9, 2015), *judgment rev'd in part, vacated in part sub nom. Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017).

[16] *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

6

make it valid.  Instead, the Appellants argue that Christopher lacked the authority to sign it on his ward's behalf.  Therefore, the question before us is whether Christopher, as his mother's guardian, had or did not have the authority to enter into a valid contract that was not essential to her care with the burden of proof lying with Christopher, because the Defendants have shown that an arbitration agreement exists and Christopher does not dispute that fact.  If he did have the authority, then pursuant to the KUAA and the FAA, this matter is bound for arbitration.  If he did not have the authority to do so, then the contract is void.  With this in mind, we begin our analysis and review the trial court's conclusions of law *de novo.*[17]

## A. Guardians only have the authority to surrender their ward's civil rights when necessary to provide needed care and services to the ward.

The powers and responsibilities of a guardian are defined not by the terms of an instrument, but by statute.  Guardians must "enable the ward to receive medical or other professional care."[18]  Guardians must ensure a ward's "care, comfort, and maintenance,"[19] and protect and effect the ward's "personal, civil, and human rights."[20]  Guardians are required to "make provision for the ward's care, comfort, and maintenance and arrange for such educational, social, vocational, and rehabilitation services as are

---

[17] *Ping,* 376 S.W.3d at 590 (citing *North Fork Collieries, LLC v. Hall,* 322 S.W.3d 98, 102 (Ky. 2010)).

[18] KRS 387.660(3).

[19] KRS 387.660(2).

[20] *Id.*; KRS 387.640.

7

appropriate."[21] The ward is stripped of a number of rights when a guardian is appointed, including "the right [. . .] to enter into contractual relationships."[22]

The power of a guardian over the interests of a ward are broad, but there are restrictions. KRS 387.660 outlines those limitations of power. Namely, the guardian must "act [. . .] in a manner which limits the deprivation of civil rights and restricts [the ward's] personal freedom only to the extent necessary to provide needed care and services to [the ward.]"[23] And, the guardian does not have the power to authorize an "abortion, sterilization, psychosurgery, removal of a bodily organ, or amputation of a limb unless the procedure is first approved by order of the court or is necessary, in an emergency situation, to preserve the life or prevent serious impairment of the physical health of the ward."[24]

Of course, the guardianship statutes are remedial rather than exclusive,[25] and are generally applicable rather than specific. Further, this Court has held that "[t]he right to act for the incompetent in all cases has become recognized in this country as the doctrine of substituted judgment and is broad enough not only to cover property but also to cover all matters touching on the well-being of the ward."[26] But, where the legislature has

---

[21] KRS 387.660(2).

[22] KRS 387.590(10).

[23] KRS 387.660(4).

[24] KRS 387.660(5).

[25] *DeGrella By & Through Parent v. Elston*, 858 S.W.2d 698, 704 (Ky. 1993).

[26] *Strunk v. Strunk*, 445 S.W.2d 145, 148 (Ky. 1969).

placed a restriction on the power of a guardian, this Court is obligated to respect that restriction so long as it is constitutionally permissible.

There is nothing in the applicable statutes to remotely suggest that, when the ward is deprived of the ability to enter into contracts on their own behalf by operation of the appointment of a guardian, the authority to enter any and all contractual relationships on the ward's behalf automatically vests to the guardian. The Appellees urge this Court to assume that the legislature meant for all rights of the ward to transfer to the guardian by its adoption of KRS 387.590(7). However, KRS 387.590(7) says nothing of whether the guardian inherits the same power to act on his ward's behalf as the ward would have absent a determination of disability. This Court is not at liberty to read into a statute an assumption that is not there when the legislature has, instead, expressed a contrary intent through the plain language of a statute.[27]

The legislature has expressed its contrary intent by authorizing the guardian to surrender the "civil rights" of his or her ward "only to the extent necessary to provide needed care and services to [the ward.]"[28] As a result, we must reverse the Court of Appeals insofar as it held that a guardian may, "generally," contract away their ward's civil rights without restriction because

---

[27] *Commonwealth v. Moore*, 545 S.W.3d 848, 851 (Ky. 2018) (citation omitted) (stating that in "interpreting a statute, we have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. As such, we must look first to the plain language of a statute and, if the language is clear, our inquiry ends.").

[28] KRS § 387.660(4).

9

doing so is "within the ambit of what is reasonably inferable from the statutes."[29]

Therefore, we hold that a guardian has the authority to bind their ward to contracts that limit or deprive the civil rights of their ward only to the extent necessary to provide needed care and services to the ward, as clearly indicated by the plain language of the statute. To determine if a contract is voidable for a guardian's lack of authority demands a two-part analysis: we must determine if (1) there was a limitation or deprivation of the ward's civil rights, and (2) the limitation or deprivation of rights was only to the extent necessary to provide needed care and services to the ward.

If the contract restricted the civil rights of the ward beyond that which was required for the guardian to secure needed care and services to the ward, then the guardian lacked the authority to enter into the contract on their ward's behalf, and the contract is void. If it deprives the ward of her rights only to the extent necessary, then the guardian has the authority to enter the contract and it is valid. Of course, the corollary is that guardians are free to exercise their broad power as permissible under KRS Chapter 387 to bind their wards to contracts so long as they do not broach fundamental rights.

For example, though a guardian contracting for the sale of the ward's real or personal property would likely implicate the ward's rights under the § 1 of the Kentucky Constitution to acquire and protect their property, executing

---

[29] *Jackson*, No. 2019-CA-1770-MR, 2021 WL 137772, at *4 (Ky. App. Jan. 15, 2021).

such a contract may be necessary for the guardian to carry out his or her duties to "enable the ward to receive medical or other professional care"[30] or ensure the ward's "care, comfort, and maintenance."[31]  The guardian is further empowered to make these expenditures by KRS 387.660(5), which states that the guardian may "expend sums from the financial resources of the ward reasonable and necessary to carry out the powers and duties assigned to him by the court."  While this scenario would limit the ward's rights, so long as the limitation is no more than necessary, such an action would not be violative of KRS 387.660 and the contract would not be voidable.

When a trial court is faced with the question of whether a guardian had the authority to bind their ward, the trial court should explicitly state in its findings of fact, first, if there was a limitation of the ward's civil rights—specifying which right was limited—and, second, if that limitation was a necessary one.  A trial court should draw upon guidance from this Court and the U.S. Supreme Court as well as those rights as enumerated in the United States and Kentucky Constitutions when resolving the former question. Answering the latter question will be fact intensive and, as a result, is not subject to a bright line rule.  Therefore, the determination of whether limiting a ward's civil rights was necessary is reserved for the sound discretion of the trial court.

---

[30] KRS 387.660(3).

[31] KRS 387.660(2)

11

**B. Arbitration agreements waive the right to a trial by jury; therefore, a guardian only has the authority to bind their ward to the extent necessary to provide needed care and services to the ward.**

The fundamental civil "[r]ights of life, liberty, worship, pursuit of safety and happiness, free speech, acquiring and protecting property, peaceable assembly, redress of grievances, bearing arms,"[32] and the right to a trial by jury[33] may all be implicated by the authority granted to a guardian and stripped from a ward. As this Court has pointed out,[34] arbitration is not only permissible, but, indeed, favored as a method of dispute resolution and endorsed by the Kentucky Constitution.[35]

KRS 387.660(4) applies to all civil rights—not just to the right to trial by jury. However, arbitration agreements constitute a waiver of the right to a trial by jury, which is a fundamental right.[36] Therefore, Christine's fundamental

---

[32] Ky. Const. § 1.

[33] Ky. Const. § 7.

[34] *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 574 (Ky. 2012) (holding "it has long been the public policy of Kentucky that arbitration is a favored method of dispute resolution."); *Poggel v. Louisville Ry. Co.*, 10 S.W.2d 305, 310 (Ky. 1928) (stating "[a]rbitration has always been favored by the courts.").

[35] Ky. Const. § 250.

[36] *See Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 908 S.W.2d 104, 106 (Ky. 1995) (stating "[t]he Kentucky Constitution, in actions at law, gives the litigant an unqualified right to trial by jury. Section 7 of the Kentucky Bill of Rights provides: 'The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution.' To emphasize the Bill of Rights, Section 26 of the Kentucky Constitution provides that "[t]o guard against transgression of the high powers which we have delegated, We Declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate; and all laws contrary thereto, or contrary to this Constitution, shall be void.' The broad right of preservation is again referenced in CR 38.01; i.e., 'the right of trial jury as declared by the constitution of Kentucky or as given by the statute of Kentucky shall be preserved to the parties inviolate.'").

12

right to a trial by jury was limited by Christopher signing the arbitration agreement. The first prong of the test is satisfied.

We must next determine if that right was limited beyond the extent necessary to provide needed care and services to the ward. We believe it was. The arbitration agreement was not a condition of Christine residing at or receiving care at the facility. It was voluntary. Therefore, it was not necessary to providing care and services to her. Had the arbitration agreement been a condition of her care at or admission to the facility, then Christopher would have had the authority to bind her to the agreement. In short, because it was not necessary to provide care or services to Christine, Christopher lacked the authority to enter into the arbitration agreement. It is not binding, and void.

### III.  CONCLUSION

Based on the foregoing, we reverse the Court of Appeals, and hold that Christopher lacked the authority, as his mother's guardian, to enter a voluntary arbitration agreement that was not a prerequisite to the provision of care or services to his ward. We remand to the trial court with instruction to resume proceedings consistent with this Opinion.

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

Lisa E. Circeo,
Hannah R. Jamison,
Megan L. Adkins
Circeo Fannin P.S.C.


COUNSEL FOR APPELLEE:

Rebecca R. Schafer
Emily W. Newman
Paul A. Dzenitis
Dzenitis Newman PLLC